IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONNA B.S.[1], | Case No. 6:22-cv-1571-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY**, Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER & TAYLOR, P.C., 474 Willamette Street, Eugene, OR, 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Franco L. Becia and J. Ricardo Hernandez, Special Assistant United States Attorneys, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Donna B.S. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying her application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initials of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Insurance Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ) and remands for further proceedings.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on November 3, 2020, alleging a disability onset date of March 23, 2020. AR 192. Plaintiff was born on June 9, 1970. *Id.* She was 49 years old on her alleged disability onset date. *Id.* Before the alleged onset date, Plaintiff worked as a shipping clerk, retail sales assistant, marketing salesclerk, inventory data specialist, administrative assistant, and customer service representative. AR 55-56, 229. Plaintiff claims she now cannot work due to bipolar disorder, chronic severe migraines, and type II diabetes. AR 228. The agency denied Plaintiff's claims both initially and on reconsideration, and Plaintiff requested a hearing before an ALJ. AR 93, 107, 115. Plaintiff and her attorney appeared telephonically before ALJ Katherine Weatherly on October 14, 2021. AR 31, 33. The ALJ denied Plaintiff's claim for benefits on November 5, 2021. AR 26. Plaintiff requested review of the ALJ's decision, AR 186, which the Appeals Council denied, AR 5, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely appealed pursuant to 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there

>significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C. The ALJ's Decision**

As an initial step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through September 30, 2024. AR 20. The ALJ then proceeded to the sequential analysis. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date. AR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: migraine headaches and diabetes mellitus, type II. *Id.* At step three, the ALJ found that neither impairment, either individually or together,

met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

The ALJ next determined Plaintiff's RFC. AR 23. The ALJ found that Plaintiff could perform "a full range of work at all exertional levels" with only the following non-exertional limitations: (1) Plaintiff "can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds"; (2) Plaintiff "needs to avoid all exposure to workplace hazards such as heights and heavy machinery"; and (3) Plaintiff "is limited to working in an office environment with a moderate noise level." *Id.*

At step four, the ALJ found that Plaintiff could perform past relevant work as an administrative assistant, sales or marketing clerk, and inventory data specialist without exceeding Plaintiff's RFC. AR 26. The ALJ therefore held that Plaintiff was not disabled under the Act. *Id.* The ALJ did not proceed to step five.

## DISCUSSION

Plaintiff argues that the ALJ made two errors. First, Plaintiff argues the ALJ erred by failing to provide specific, clear and convincing reasons to discount Plaintiff's subjective testimony and reports regarding the frequency and severity of Plaintiff's symptoms. Second, Plaintiff argues that the ALJ erred by rejecting lay testimony without comment. Plaintiff requests that the Court credit as true the improperly rejected evidence and case remand this case for benefits.

### A. Plaintiff's Subjective Symptom Testimony

#### 1. Legal Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

PAGE 7 – OPINION AND ORDER

### 2. The ALJ's findings

The ALJ found that Plaintiff passed the first test but failed the second. At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged pain and other symptoms. AR 24. At the second step, however, the ALJ found that Plaintiff's alleged frequency and intensity of these symptoms were "not entirely consistent" with medical and other evidence. *Id.* The ALJ provided two reasons for finding inconsistency: (1) In an oral hearing with the ALJ, Plaintiff alleged a migraine pain intensity of 9 out of 10, but Plaintiff's medical records show lesser pain and impairment; (2) Plaintiff reported near daily migraines to healthcare providers, but required only regular follow-ups, infrequent emergency care, and had a gap in migraine treatment in the winter of 2020. *Id.* The ALJ also provided what appears to be a generic statement: "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the claimant's treatment records or activities of daily living, including recent past work activity." *Id.* The ALJ did not provide any further discussion or specific reasons relating to Plaintiff's "activities of daily living, including recent work activity," and thus the Court does not find those reasons to be adequately articulated by the ALJ.

### 3. Plaintiff's Testimony

At the hearing, Plaintiff testified that she cannot drive while she has a migraine. AR 38. Plaintiff explained that she takes daily, monthly, and as-needed prescription drugs as well as the Cefaly external trigeminal nerve stimulation (eTNS) device to treat migraines. AR 44, 47; *see also, e.g.*, AR 916 (medical record from August 16, 2021, reciting Plaintiff's medication regime). Plaintiff testified that at the time of the hearing she had recently begun receiving Botox injections every three months to treat migraines, having undergone two rounds. AR 44-45. She would not know until the third round whether the treatment would be successful. AR 46. Plaintiff

noted that so far these injections temporarily made her migraines less debilitating, but she still could not drive during a migraine, and would require accommodations to work. AR 45. Plaintiff identified that barometric pressure, stress, fragrances, exercise, and temperature changes can trigger migraines, and that migraines can wake her up in the night. AR 50. Plaintiff testified and stated in her function report that she had lost jobs because of absences she takes to cope with migraines. AR 48, 268. A former coworker corroborated this, stating that Plaintiff has had debilitating migraines, causing excessive work absences. AR 284.

Plaintiff testified she experiences daily headaches with a pain level of two to three. AR 51. She also testified: "When I have a migraine, they run between, like, right now, I'm probably a pain level 9. But I feel sometimes like I feel like I'm a 29 in pain." *Id.* She explained that she has two-to-three migraines per week, which last four-to-six hours. AR 52. She testified to lingering symptoms after a migraine which would cause errors in her work and prevent her from functioning at a normal level. AR 52-53. Plaintiff testified that her treatments and coping techniques do not always work. AR 53-54.

    **4. Specificity**

Plaintiff argues that the ALJ failed to provide sufficiently specific reasons for rejecting Plaintiff's allegations of symptom frequency and intensity. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980

F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Brown-Hunter*, 806 F.3d at 489. The ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Id.* at 494. Failure to do so is legal error. *Id.*

Here, the ALJ identified the subjective symptom testimony the ALJ found inconsistent with the record: Plaintiff's allegation of a pain level of 9 out of 10, and Plaintiff's alleged near-daily frequency of migraines. AR 24. The ALJ further identified what evidence the ALJ believed contradicted these allegations: Plaintiff's reported pain levels to medical providers, a lack of frequent emergency department (ED) visits, a gap in migraine treatment during the winter of 2020, and the fact that Plaintiff's treatment schedule required only regularly scheduled follow-ups. *Id.* The ALJ thus explained the reasoning linking the discredited testimony to particular parts of the record with sufficient clarity to permit review—to which the Court now turns.

   5. **Inconsistency with the Treatment Records**
      a. **Symptom Intensity**

To reject Plaintiff's testimony of the severity of Plaintiff' migraines, the ALJ considered evidence in the record where Plaintiff indicated lower pain levels (out of 10) than Plaintiff indicated at the time of the hearing. The ALJ relied on the following records for this claimed inconsistency (arranged here in chronological order):

- 8 in a neurology follow-up for migraines in February 2020, AR 663;

PAGE 10 – OPINION AND ORDER

- no pain level recorded in an unrelated family medicine appointment in March 2020, AR 741-44;

- 4 in a neurology telehealth follow-up for migraines in April 2020, AR 669;

- 0 in an unrelated family medicine appointment in May 2020, AR 738;[3]

- 6 in a neurology follow-up in May 2020, AR 676;

- 5 in a neurology follow-up in June 2020, AR 685;

- 6 in a neurology follow-up in August 2020, AR 692;

- 0 in an unrelated family medicine appointment in August 2020, in which Plaintiff stated that her pain medications were working, AR 733;

- 7 in a neurology follow-up in March 2021, AR 848;

- 5 in a neurology follow-up in May 2021, AR 923; and

- no pain in a neurology visit for Botox administration in July 2021, AR 917.

*See* AR 24. The ALJ added that medical providers described Plaintiff as "alert, cooperative, and in good spirits," "in no acute distress," and as having "clear speech and . . . able to provide a relevant history." *Id.*

This reason is not clear and convincing. There is not a clear and convincing inconsistency between the medical record and Plaintiff's testimony, for several reasons. First, the ALJ did not explain why Plaintiff's *current* pain levels reported to medical providers in the non-emergency[4]

---

[3] At this visit, Plaintiff reported suffering from a migraine for five days and a Toradol injection was administered to treat migraine pain, AR 737, 739, which is inconsistent with a pain level of zero.

[4] After reciting the purportedly inconsistent pain levels, the ALJ emphasized that "there are instances of [Plaintiff]'s treating provider directing [Plaintiff] to the emergency department due to an intractable migraine," without citing the record. AR 24. This comment by the ALJ is unsupported for two reasons. First, the record does not reveal any ED *referrals* after the alleged onset date. (There was an ED referral, and visit, in 2017, before the onset date. AR 476, 641.)

PAGE 11 – OPINION AND ORDER

visits listed above reflect pain levels experienced during a severe migraine. In none of the cited appointments did Plaintiff indicate she was experiencing her typical severe migraine pain level. Indeed, the provider comments noted by the ALJ that Plaintiff was in good spirits and in no acute distress supports that she did not attend these visits while suffering from an acute severe migraine. Further, someone experiencing a severe and debilitating migraine would likely postpone routine medical appointments. A hearing with an ALJ, however, is harder to miss, which is consistent with Plaintiff's testimony of attending the hearing despite having a severe migraine and reporting a severe pain level during her hearing.

Second, other records in the medical record are consistent with Plaintiff's testimony of high pain levels during severe migraines. Plaintiff's report of a pain level of 8 out of 10 during a neurology office visit in February 2020, is consistent with a peak migraine pain level of 9 out of 10. AR 663. Plaintiff's pain reports before the alleged onset date are revealing as well. In a neurology appointment in 2019, Plaintiff reported that her pain level during a typical migraine is 8 out of 10, and sometimes 10 out of 10. AR 646. In an urgent care visit in 2017, Plaintiff reported a three-day migraine varying in pain level between 5 and 9 out of 10. AR 473.

### b. Symptom Frequency

The ALJ rejected Plaintiff's allegation of frequent debilitating migraines because Plaintiff "required only regularly scheduled follow-up appointments, in intervals of 30-90 days"; because of "a gap in migraine treatment during the winter of 2020"; and because Plaintiff "sought urgent or emergency care for her migraines only infrequently." AR 24. Routine, conservative treatment

---

Second, the only ED visit after the alleged onset date, and the only reference to an "intractable" migraine, is from May 19, 2020. Plaintiff went to the ED after missing work for 28 days due to an intractable migraine. AR 609. During the 2020 visit, Plaintiff presented with a pain level of 3 out of 10. *Id.* The ALJ, however, rejected this instance of an "intractable" migraine as atypical, attributing it to an allergic reaction rather than disability. AR 24. The incident therefore does not bear on Plaintiff's pain level during a typical severe migraine by the ALJ's reasoning.

can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3).

The ALJ's observations do not add up to a clear and convincing reason. The ALJ did not explain how Plaintiff's treatment regime bears upon the frequency of Plaintiff's severe migraines. As the ALJ recognized, Plaintiff reported near-daily migraines to multiple medical providers, but no provider recommended more frequent medical appointments. Appointments generally in intervals of 30-90 days are rather frequent, and the ALJ did not cite any support for the notion that more frequent appointments is the standard of care, was expected or recommended by Plaintiff's medical providers, or would have improved Plaintiff's expected outcome. Nor did the ALJ explain the relevance of the gap in treatment in Winter 2020, from August 2020 through March 2021. Even assuming this gap reflected an absence of symptoms, because disability under the Act is defined in terms of *sustained* work, "[o]ccasional symptom-free periods . . . are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).

## B. Lay Testimony

Plaintiff argues that the ALJ improperly rejected the function reports (lay testimony) of Plaintiff's spouse James S. and Plaintiff's friend without providing a reason. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is

competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

PAGE 14 – OPINION AND ORDER

The Ninth Circuit has not yet decided whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for discounting a lay witness's testimony.").[5] The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L.S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. The revised regulations describe how to evaluate *medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly

---

[5] The Commissioner relies on a footnote in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) (unpublished) ("Fryer also argued that the ALJ erred by refusing to consider lay witness statements from her husband. It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). This Court does not rely on unpublished dispositions of the Ninth Circuit.

irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (cleaned up)). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5 (citing 20 C.F.R. §§ 416.913(a), 416.929(a)).[6] The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12 F.3d at 918-19 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)."[7] (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

---

[6] The court in *Joseph L.S.* cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529.

[7] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4).

Plaintiff's husband testified in his function report that Plaintiff has "tried everything possible to regulate her migraines," contrary to the ALJ's reason for rejecting Plaintiff's testimony of frequent migraines. AR 283. Plaintiff's husband and friend both testified that Plaintiff's migraines are debilitating. AR 276, 283, 284. The friend testified that Plaintiff's migraines have "become progressively worse over the past 15 years." AR 290. The ALJ's discussion of lay testimony was confined to the second step in a comment on Plaintiff's irritability during migraines. AR 21. While the ALJ credited this testimony in finding a mild limitation due to irritability, the ALJ did not otherwise comment on the testimony. AR 21-26. The ALJ therefore erred by failing to provide any germane reason for rejecting the testimony.

The Commissioner contends that this lay testimony is cumulative of Plaintiff's own, so that any such error is harmless. The Court need not decide whether the lay testimony is cumulative. If it is not cumulative, the error is harmful because the improperly rejected evidence is consequential to the ALJ's finding of no disability. If it is cumulative, the error is harmful because Plaintiff's own testimony was improperly rejected as discussed above.

**C.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

PAGE 17 – OPINION AND ORDER

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id. at 408*.

The ALJ erred in rejecting Plaintiff's subjective symptom testimony without a clear and convincing reason and in rejecting lay testimony without comment. The record, however, is not free from ambiguities and conflicts. The record needs further development to establish the effectiveness or ineffectiveness of Plaintiff's Botox treatment. Moreover, ambiguity remains in the record as to Plaintiff's pain levels *during* a severe migraine after the alleged onset date.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge